IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

ROBERT HAGEN and wife
DALE HAGEN,

      Plaintiffs,

v.                                 No. 08-cv-1197

U-HAUL CO. OF TENNESSEE;
KEITH O'BRIEN, individually, and
d/b/a WEST TENNESSEE MOVING
COMPANY; RONALD MATHISEN,
individually and d/b/a GOLDEN
EAGLE TRANSPORTATION; U-HAUL
INTERNATIONAL, INC.; U-HAUL CO.
OF ARIZONA; and GENERAL MOTORS
CORPORATION,

      Defendants.

_____

ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND GRANTING IN PART,
DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS
_____

      The Plaintiffs, Robert and Dale Hagen, initiated this civil action against the Defendants, U-Haul Co. of Tennessee, Keith O'Brien individually and doing business as West Tennessee Moving Company, Ronald Mathisen individually and doing business as Golden Eagle Transportation, U-Haul International, Inc., U-Haul Co. of Arizona, and General Motors Corporation ("GMC"), in the Circuit Court of Henry County, Tennessee.  The Defendants removed the case to federal court pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332 on the basis of diversity of citizenship.  In total, the Defendants filed four separate motions to dismiss, while the Plaintiffs sought remand for lack

1

of subject matter jurisdiction.  Upon consideration of these motions, the Plaintiffs' motion to remand is DENIED; the Defendants motion to dismiss fraud and conspiracy claims is GRANTED; U-Haul Co. of Tennessee, West Tennessee Moving Company, and O'Brien's motion to dismiss is GRANTED; U-Haul Co. of Arizona, Golden Eagle Transportation, and Ronald Mathisen's motion to dismiss is GRANTED in part, DENIED in part; and U-Haul International's motion to dismiss is GRANTED in part, DENIED in part.[1]

FACTUAL BACKGROUND[2]

Robert Hagen rented a 2006 GMC 26' Super Mover, model C5C042 (the "truck"), which had an Arizona license plate, for use in moving his belongings from Clearbrook, Minnesota to Springville, Tennessee.  (Docket Entry ("D.E.") No. 1, Ex. 1 Compl., at ¶ 8.)  Presumably, Hagen rented the truck from Ronald Mathisen, who was doing business as Golden Eagle Transportation, in Bemidji, Minnesota.  (Id. at ¶ 5.)  Following the trip, his wife then returned the truck to Keith O'Brien, who was doing business as West Tennessee Moving Company, in Paris, Tennessee.  (Id. at ¶ 4.)  Hagen had possession of the truck from June 11 to June 16, 2007.  (Id.)  At some point while operating the truck, Hagen allegedly inhaled noxious fumes, including carbon monoxide.  (Id.)  As a result of this exposure, Hagen claimed to have endured permanent bodily injuries, pain and

---

[1]The first three motions to dismiss were brought under Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted, while the last motion to dismiss involved both Rule 12(b)(6) and Rule 12(b)(2) for lack of personal jurisdiction.

[2]For the purpose of deciding a motion to dismiss for failure to state a claim, the Court will "accept as true all of the factual allegations contained in the complaint."  Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).

suffering, and other damages.  (Id. at ¶ 38.)  His wife, Dale Hagen, contends she has suffered damages for loss of consortium and medical expenses.  (Id. at ¶ 39.)

Plaintiffs sued under Tennessee law for negligence, breach of express warranty, breach of implied warranty, strict liability, fraud, and conspiracy among the Defendants.  (Id. at ¶¶ 23-26, 30-33, 35-36.)  When the complaint was originally filed, the Plaintiffs resided in Henry County, Tennessee.  (Id. at ¶ 1.)  The majority of the Defendants are domiciled outside of Tennessee, except for U-Haul Co. of Tennessee, West Tennessee Moving Company, and O'Brien  (referred to as the "Tennessee Defendants").  (Id. at ¶¶ 2-7.)

In their notice of removal, the Defendants alleged that the non-diverse defendants had been fraudulently joined.  (D.E. 1, Notice of Removal, at ¶ 14.)  This pleading was followed by a series of motions to dismiss.  The first argued that the Plaintiffs failed to state claims of fraud and conspiracy against all Defendants, except GMC.  (D.E. 5, Mot. to Dismiss, at ¶ 4.)  The second motion asserted that the Plaintiffs failed to state a claim against the Tennessee Defendants.  (D.E. 6, Mot. to Dismiss, at ¶ 4.)  The third alleged that the Hagens failed to state a claim against U-Haul Co. of Arizona, Golden Eagle Transportation, and Mathisen.  (D.E. 7, Mot. to Dismiss, at ¶¶ 4-5.)  The last motion to dismiss concerned the lack of personal jurisdiction and failure to state a claim as to U-Haul International.  (D.E. 8, Mot. to Dismiss, at ¶¶ 3-6.)  Although the Plaintiffs have not filed responses to any of these motions, they have moved to remand the case to state court based upon lack of complete diversity among the parties.  (D.E. 10, Mot. to Remand, at 1.)  In its resolution of these motions, the Court must first determine whether subject matter jurisdiction exists.

JURISDICTION ANALYSIS

A case initially filed in state court may be removed to federal court pursuant to 28 U.S.C. §§ 1441 and 1446:  "Any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court."  28 U.S.C. § 1441(a).  When federal question jurisdiction is lacking, however, a case may be removed "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b).  Here, based on the allegations of the complaint, removal would not be permitted because U-Haul Co. of Tennessee, West Tennessee Moving Company, and O'Brien are all located in Tennessee.  In this case, defendants who are citizens of, or incorporated in, Tennessee would normally preclude removal under 28 U.S.C. § 1441(b).  The Defendants herein, however, contend that the joinder of these non-diverse defendants by the Plaintiffs was undertaken solely for the purpose of avoiding removal under § 1441.

The Sixth Circuit has recognized that "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds."  Coyne ex rel. Ohio v. Am. Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999) (citation omitted).  However, the party removing the case must establish that the joinder was a subterfuge.  Alexander v. Elec. Data Sys. Corp., 13 F.3d 940, 949 (6th Cir. 1994).  To prove fraudulent joinder, "the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law."  Coyne, 183 F.3d at 493 (citing Alexander, 13 F.3d at 949).  "There can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law."  Alexander, 13 F.3d at 949 (quoting Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 176 (5th Cir. 1968)).  If there is "arguably a reasonable basis for predicting that the

4

state law might impose liability on the facts involved," then remanding the case to state court is appropriate.  Id.; see also Coyne, 183 F.3d at 493 (stating that a "colorable basis for predicting that a plaintiff may recover against nondiverse defendants" requires remand); Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C., 176 F.3d 904, 907 (6th Cir. 1999) (holding that "the inquiry is whether [plaintiff] had at least a colorable cause of action against [the defendant]").  "Any disputed questions [of] fact[] and ambiguities in the controlling state law [should be resolved] . . . in favor of the nonremoving party."  Alexander, 13 F.3d at 949 (citing Carriere v. Sears Roebuck & Co., 893 F.2d 98, 100 (5th Cir. 1990)).  In other words, "[a]ll doubts as to the propriety of removal are resolved in favor of remand."  Coyne, 183 F.3d at 493.  A plaintiff's motive in joining non-diverse defendants is immaterial to determining whether joinder was fraudulent.  Jerome-Duncan, Inc., 176 F.3d at 907 (citation omitted).  As the Hagens' claims are based on Tennessee law, the Court looks to the law of that state to determine whether the Tennessee Defendants were fraudulently joined.  Id.

Because the jurisdictional question hinges on fraudulent joinder, the Court must analyze whether any of the Plaintiffs' theories of recovery against the Tennessee Defendants provide an "arguably . . . reasonable basis for predicting that the state law might impose liability on the facts involved."  Alexander, 13 F.3d at 949.  The complaint alleges that the Tennessee Defendants "failed to warn of any defect or dangerous condition when they performed inspection, repair and maintenance work on the truck, before and after the subject rental period," "failed to follow an appropriate and reasonable course of action, although they had the ability to warn, instruct, recall or modify the GMC truck," and "failed to use reasonable, ordinary and due care under the circumstances."  (D.E. 1, Ex. 1 Compl., at ¶¶ 23, 33 (emphasis added).)  In their memorandum, the Plaintiffs argue that if the Tennessee Defendants had warned Dale Hagen about previous reports of

5

carbon monoxide poisoning at the time she returned the truck, "[Robert] Hagen could have received appropriate medical treatment earlier and lessened his injuries."[3]  (D.E. 10, Mot. to Remand, at 2.) Thus, the Plaintiffs assert a claim of negligence against the Tennessee Defendants.  The Defendants contend that, because the truck was returned after Hagen had been hospitalized for inhaling noxious fumes, the Plaintiffs cannot establish causation between the Tennessee Defendants' alleged negligent acts and Hagen's injuries.  Additionally, the Tennessee Defendants claim that they owed no duty to the Plaintiffs under these factual circumstances.

Under Tennessee common law, a claim of negligence is established by proof of the following: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause."  West v. E. Tenn. Pioneer Oil Co., 172 S.W.3d 545, 550 (Tenn. 2005) (quoting Coln v. City of Savannah, 966 S.W.2d 34, 39 (Tenn. 1998)).  In this case, the Defendants focus on the elements of duty and causation.  (D.E. 4, Def.'s Mot. to Dis., 5.)

To establish causation, the Plaintiffs must show both cause in fact and proximate cause.  Hale v. Ostrow, 166 S.W.3d 713, 718 (Tenn. 2005).  For cause in fact, a plaintiff must establish that the defendant's conduct directly contributed to the plaintiff's injury.  Id.  Put another way, if the plaintiff's injury would not have occurred "but for" the defendant's allegedly negligent actions, cause in fact exists.  Wood v. Newman, Hayes & Dixon Ins. Agency, 905 S.W.2d 559, 562 (Tenn. 1995).  The Tennessee Supreme Court has said that "[i]t is not necessary that the defendants' act

---

[3]The liability, or lack thereof, of all three Tennessee Defendants hinges on the viability of this argument.  This is because the negligent conduct was allegedly committed by O'Brien, who was doing business as West Tennessee Moving Company, which was acting under the auspices of U-Haul Co. of Tennessee.  (D.E. 10, Mot. to Remand, at 2.)

[sic] be the <u>sole</u> cause of the plaintiff's injury, only that it be <u>a</u> cause." <u>Hale</u>, 166 S.W.3d at 718 (emphasis in original).  In this case, the Plaintiffs allege that but for the Tennessee Defendants' failure to warn about the possibility of carbon monoxide poisoning, the nature of Hagen's ailment would have been diagnosed sooner and he would have received appropriate and timely medical treatment, which would have lessened the overall severity of his injuries.  At this stage in the litigation, disputes of fact are resolved in favor of the non-removing party.  <u>Alexander</u>, 13 F.3d at 949.  Because the Court must assume their allegations as true, the Plaintiffs have appropriately pled facts establishing cause in fact.  In applying the requisite standard of review, the Court recognizes that the delay caused by the post-accident failure to warn could have contributed to, or exacerbated, the ultimate injuries.  <u>See id.</u>

> To establish proximate cause, Tennessee courts apply a three-prong test:
>
> (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

<u>Haynes v. Hamilton County</u>, 883 S.W.2d 606, 612 (Tenn. 1994) (citing <u>McClenahan v. Cooley</u>, 806 S.W.2d 767, 775 (Tenn. 1991)).  Applying these three factors, the Court finds that the question of proximate cause is a close one.  Whether the Tennessee Defendants' conduct was a substantial factor in causing or contributing to Plaintiff's injuries depends on the length of the delay by the Tennessee Defendants and to what degree the delay aggravated Hagen's injuries–a factual determination that may require expert testimony.  The Defendants have referenced no specific rules or policy reasons to support relieving them of liability due to the manner in which the harm resulted.  Foreseeability of the harm is also a close question, and is difficult to answer with the sparse facts currently

available to the Court.  In applying the third prong, it may be important to learn what Dale Hagen told the Tennessee Defendants about her husband's condition.  In short, because the allegations do not clearly show the absence of proximate cause, the Plaintiffs have satisfied this element of negligence for the purpose of the fraudulent joinder analysis.  Cf. Hale, 166 S.W.3d at 718 (stating, in holding summary judgment for defendants was improper, that proximate cause is "ordinarily [a] jury question[]") (quoting Haynes, 883 S.W.2d at 612).

Finally, the Court must consider whether the Tennessee Defendants owed a duty to the Plaintiffs.  Whether a defendant owes a duty is a question of law.  Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993).  Under Tennessee law, "[t]he duty owed to the plaintiffs by the defendant is in all cases that of reasonable care under all of the circumstances."  West v. E. Tenn. Pioneer Oil Co., 172 S.W.3d 545, 550 (Tenn. 2005) (citing Doe v. Linder Const. Co., 845 S.W.2d 173, 177 (Tenn. 1992)).  There is, in negligence cases, a duty "to refrain from engaging in affirmative acts that a reasonable person 'should recognize as involving an unreasonable risk of causing an invasion of an interest of another' or acts 'which involve[] an unreasonable risk of harm to another.'" Satterfield v. Breeding Insulation Co., __ S.W.3d __, 2008 Tenn. LEXIS 590, at *13 (Tenn. 2008) (quoting Restatement (Second) of Torts §§ 284, 302, at 19, 82 (1965)) (emphasis added).  "Thus, if an individual 'acts at all, [he or she] must exercise reasonable care to make his [or her] acts safe for others.'" Id. (alternations in original) (quoting Restatement (Second) of Torts § 4 cmt. b, at 8). The Tennessee Supreme Court has clarified, however, that the law does not always require a person to "act reasonably to secure the safety of others."  Id. at *14.  Tennessee law draws a distinction between misfeasance (i.e. "active misconduct working positive injury to others") and nonfeasance (i.e. "passive inaction, a failure to take positive steps to benefit others, or to protect them from harm

8

not created by any wrongful act of the defendant"). Id. (quoting Francis H. Bohlen, The Moral Duty to Aid Others as a Basis of Tort Liability, 56 U. Pa. L. Rev. 217, 219 (1908)).  Tennessee courts have generally imposed a tort duty for misfeasance, but not for nonfeasance.  See, e.g., Burroughs v. Magee, 118 S.W.3d 323, 328 (Tenn. 2003); Newton v. Tinsley, 970 S.W.2d 490, 492 (Tenn. Ct. App. 1997).  In determining whether a plaintiff's act is misfeasance or nonfeasance, a court should focus on "whether the individual's entire course of conduct created a risk of harm."[4]  Satterfield, 2008 Tenn. LEXIS 590 at *17.  Tennessee has recognized some instances where nonfeasance can give rise to a duty; "[t]hese exceptions arise when certain special relationships exist between the defendant and either the person who is the source of the danger or the person who is foreseeably at risk from the danger."  Id. at *26 (citing Biscan v. Brown, 160 S.W.3d 462, 478-79 (Tenn. 2004); Bradshaw, 854 S.W.2d at 871).  The Tennessee Supreme Court has been clear that an affirmative duty to prevent others from harm is limited to situations where "certain socially recognized relations exist which constitute the basis for such legal duty."  Turner v. Jordan, 957 S.W.2d 815, 818 (Tenn. 1997).

The Tennessee Defendants argue that only the parties who rented the truck to the Plaintiffs

---

[4]To aid in the understanding of this distinction, the Tennessee Supreme Court offered the example of a motorist who fails to break and, as a result, strikes a pedestrian crossing the road. "Even though the driver's negligent act–failing to apply the brakes–is an omission, the 'driver's careless failure to apply the brakes is negligent driving, not negligent failure to rescue.'" Satterfield, 2008 Tenn. LEXIS 590 at *17 (quoting John C. P. Goldberg & Benjamin C. Zipursky, The Restatement (Third) and the Place of Duty in Negligence Law, 54 Vand. L. Rev. 657, 691 (2001)).  Thus, the driver has committed misfeasance.  As an example of nonfeasance, the court provided the scenarios of "[a] expert swimmer who stands on the shore watching a child drown or a passerby on the bridge who cannot be bothered to throw a rope to a person in distress in the waters below . . . ." Id. at *20.  The court noted that "[t]he expert swimmer or the indifferent passerby on the bridge may be worthy of social approbation, but financial compensation for failing to act to avert a danger not caused by the unwilling rescuer hardly seems appropriate." Id. at *25.

owed them a duty.  (D.E. 11, Def.'s Response, at 6-7.)  They assert that they played no role in creating the risk of harm to the Hagens, considering that they merely accepted return of the truck after the primary injury-causing event had occurred, and therefore the law imposed no duty on them. (Id. at 7-8.)  Although they do not use the specific terminology, these Defendants essentially argue that the Plaintiffs' allegations against them do not constitute misfeasance.

Taking all of the allegations of the complaint as true, the Court finds that the Plaintiffs have only pleaded nonfeasance, rather than misfeasance.  The key to this distinction is that the Tennessee Defendants' "entire course of conduct" did not affirmatively create the risk of harm.  Satterfield, 2008 Tenn. LEXIS 590 at *17.  The only risk created by misfeasance involved the truck allegedly leaking noxious gases, which arose prior to the Plaintiffs' interaction with the Tennessee Defendants.  The Hagens do not aver that the Tennessee Defendants had control of the defective truck prior to the primary injury-causing event, which occurred before Dale Hagen returned the truck.  The Plaintiffs merely assert that after Hagen had been hospitalized–as the result of the risks created by other parties' conduct–the Tennessee Defendants then failed to take action that might have reduced the impact on Hagen's condition.  The Tennessee Defendants' omissions may have exacerbated the Plaintiffs injuries in a "but for" causation sense, yet these failures to act, at most, constituted nonfeasance.  A risk that Hagen would not receive more timely medical treatment, which is the only risk attributed to the Tennessee Defendants, resulted from passive inaction, as opposed to active misconduct.

The Court must next consider whether the Tennessee Defendants had a special relationship giving rise to an affirmative duty.  Satterfield, 2008 Tenn. LEXIS 590 at *14.  This type of relationship may be between either the defendant "and the individual whose conduct threatens to

10

cause harm" or the defendant "and the individual exposed to the harm."   Nichols v. Atnip, 844

S.W.2d 655, 661 (Tenn. Ct. App. 1992).  Tennessee law is clear that this is an exception to the

general rule that no duty will be imposed for nonfeasance.   See Turner, 957 S.W.2d at 818.

Tennessee courts have found such a special relationship to exist in cases involving a physician who

failed to warn non-patients about the risks of contracting Rocky Mountain Spotted Fever from a

common campsite, Bradshaw, 854 S.W.2d at 871, a hospital that did not ensure that a patient's

husband was warned about the risks of becoming infected with HIV, Estate of Amos v. Vanderbilt

University, 62 S.W.3d 133, 138 (Tenn. 2001), a homeowner who failed to prevent minor guests from

consuming alcohol and driving drunk, Biscan, 160 S.W.3d at 478-79, and a psychiatrist who did not

protect a nurse from violent outbursts of a patient, Turner, 957 S.W.2d at 819.  See contra Newton,

970 S.W.2d at 493 (holding that the wife of a man who shot the plaintiffs owed no duty because she

had no special relationship with her husband's victims).  As a whole, these cases appear to involve

a confidential relationship, such as doctor-patient.  The Court has not found, and the parties have

not cited, any cases in which a Tennessee court has specifically determined that such a relationship

existed under facts similar to the case herein.

In this matter, the Tennessee Defendants received the Plaintiffs' rental truck following the

conclusion of the lease term.  No Tennessee authority suggests that such a scenario would impose

an affirmative duty to mitigate injuries caused by third parties.  The Tennessee Defendants'

connection to the Minnesota company that rented the truck to the Plaintiffs is somewhat unclear

from the facts available to the Court.  It appears from the pleadings that West Tennessee Moving

Company agreed to receive trucks rented from Golden Eagle Transportation, but, beyond that, the

Court could only speculate as to the further extent of this relationship.  See Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (stating that the allegations of a complaint "must be enough to raise a right to relief above the speculative level"). Taking all of Plaintiffs' allegations as true, nothing in the complaint sets out the type of special relationship that would establish the exception under Tennessee law.  Absent such facts, the standard rule of law applies, which is that no duty will be imposed for mere nonfeasance.  See, e.g., Burroughs, 118 S.W.3d at 328; Newton, 970 S.W.2d at 492.

Because the Hagens do not allege facts that would either directly or inferentially establish the material element of duty, they have not presented a claim for negligence against U-Haul of Tennessee, West Tennessee Moving Company, or O'Brien.  Thus, the Plaintiffs cannot prove "a cause of action against non-diverse defendants under state law," Coyne, 183 F.3d at 493 (citing Alexander, 13 F.3d at 949), and the Tennessee Defendants have shown that they were fraudulently joined for the purposes of defeating diversity.  Therefore, the Court grants the Tennessee Defendants' motion to dismiss.  (See D.E. 6)  After removing the improperly joined Defendants from consideration, complete diversity among the parties exists, and as such, this case falls within the subject matter jurisdiction of this Court.  See 28 U.S.C. § 1332(a)(1).  Consideration will now be made of the Defendants' remaining motions to dismiss.[5]

## STANDARD OF REVIEW

Rule 12(b)(6) permits dismissal of a lawsuit for failure to state a claim upon which relief

_____

[5]The Plaintiffs have not filed responses to any of these motions within the requisite deadline.  See L.R. 7.2(a)(2), Local Rules of the U.S. Dist. Ct. for the W. Dist. of Tenn. ("In the case of a motion for summary judgment and a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), a response must be filed within thirty days after service of the motion.").

could be granted.  See Fed. R. Civ. P. 12(b)(6).  Federal Rule of Civil Procedure 8(a)(2) instructs that a pleading should be "a short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of a complaint is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 127 S. Ct. at 1964-65 (internal citations omitted) (quoting Fed. R. Civ. P. 8(a)(2) and Conley, 355 U.S. at 47).  "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim."  Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).  A court ruling on the sufficiency of a complaint must accept all factual allegations as true. Erickson, 127 S. Ct. at 2200 (citing Twombly, 127 S. Ct. at 1964).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  Twombly, 127 S. Ct. at 1965.

     I.     Motion to Dismiss Fraud and Conspiracy Claims

The Defendants argue that the Plaintiffs' complaint as to these issues should be dismissed because their allegations of "fraud and/or conspiracy do not meet the minimum standards of particularity required by the Tennessee or Federal Rules of Civil Procedure."  (D.E. 5, Mot. to Dismiss, at ¶ 4.)

     A.     Fraud

To establish a claim for fraud under Tennessee law, a Plaintiff must prove the following

elements: (1) an intentional misrepresentation with regard to a material fact; (2) made knowingly and with a fraudulent intent; (3) upon which the plaintiff reasonably relied and suffered damage; and (4) which relates to an existing or past fact or, if the claim is based on promissory fraud, the misrepresentation embodied a promise of future action without the present intention to carry out that promise. First Nat'l Bank v. Brooks Farms, 821 S.W.2d 925, 927 (Tenn. 1991); Stacks v. Saunders, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990). The terms "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are synonyms. Concrete Spaces, Inc. v. Sender, 2 S.W.3d 901, 904 n.1 (Tenn. 1999).

Although Tennessee law supplies the elements of fraud in a diversity action, "the procedure for pleading fraud in all diversity suits in federal court is governed by the special pleading requirements of Fed. R. Civ. P. 9(b)." Minger v. Green, 239 F.3d 793, 800 (6th Cir. 2001). Rule 9(b) provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). This Rule serves to put defendants on notice of the conduct complained of by the plaintiff to ensure that they are provided sufficient information to formulate a defense. Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 679 (6th Cir. 1988). The Sixth Circuit interprets the particularity requirement "liberally, . . . requiring a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." Coffey v. Foamex L.P., 2 F.3d 157, 162 (6th Cir. 1993) (internal quotations and citations omitted); Blount Fin. Servs., Inc. v. Walter E. Heller & Co., 819 F.2d 151, 152 (6th Cir. 1987) ("Fraud alleged in a RICO civil complaint for mail fraud must state with particularity the false statement of fact made by the defendant which the plaintiff relied on and the facts showing the

plaintiff's reliance on defendant's false statement of fact."); see also Evans v. Pearson Enters., Inc., 434 F.3d 839, 852-53 (6th Cir. 2006) (affirming dismissal of fraud action where plaintiff failed to plead reliance with particularity as required by Rule 9(b)).  In ruling on a motion pursuant to Rule 9(b), a court must read the particularity requirement in harmony with the "policy of simplicity in pleading" advanced by Rule 8, which requires that a complaint provide only a "short and plain statement of the claim." Michaels Bldg. Co., 848 F.2d at 679 (quoting Fed. R. Civ. P. 8).  However, "a district court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions." Sanderson v. HCA-The Healthcare Co., 447 F.3d 873, 876 (6th Cir. 2006).

The section of the Plaintiffs' complaint dealing with fraud states the following:

> The Defendants misrepresented to users, purchasers and renters of the subject model GMC truck, including the one involved in this cause of action, facts regarding the safety of the subject model truck, knowing their misrepresentations to be false, with the intent that these individuals and entities rely on those representations, which they did.[6]

(D.E. 1, Ex. 1 Compl., at ¶ 24.)  Reading this passage within the context of the full complaint, the Court is unable to conclude that these allegations satisfy Rule 9(b).  The complaint lacks any

---

[6]The following two paragraphs in Plaintiffs' complaint similarly state:
> To the extent that the Defendants were not aware of the falsity of their statements, as set out in the previous paragraph, they made such statements and representations in negligent disregard of reports of the dangerous design, injury potential, and the grave risks associated with the use of their GMC trucks of this model and the subject truck.
> To the extent that the Defendants were not aware of the falsity of their statements, as set out in the previous paragraphs, they made such statements and representations innocently, but negligently, and misrepresented the safety of the subject truck and those of its model.

(D.E. 1, Ex. 1 Compl., at ¶¶ 25-26.)  The Court finds that these two paragraphs provide no greater degree of particularity than the initial paragraph alleging fraud.

15

indication as to the time or place in which the fraudulent representations were made.  It fails to so much as identify whether the misrepresentations occurred before or after Hagen inhaled the noxious fumes.  Similarly, the form of the misrepresentations remains unclear: Were they made as an advertisement, a statement by a salesperson, a warranty in the rental contract, etc.?  Also, aside from generally stating that the fraud involved the "safety" of the product, the complaint does not expound upon the content of the misrepresentations.  The topic of safety could encompass a wide range of explicit and implicit assertions.  While a plaintiff need not include precise quotations of the misrepresentations that allegedly constituted fraud, providing the specific factual assertions underlying the fraud is helpful in affording the defendants requisite notice.  See Michaels Bldg. Co., 848 F.2d at 679 (stating that the purpose of the particularity requirement is to provide the defendant with sufficient notice to formulate a defense).  In its present form, the Plaintiffs' complaint is simply too vague as to the "who, what, where, and when" of the fraud to meet the particularity requirement.  General Elec. Co. v. Latin Am. Imports, S.A., 187 F. Supp. 2d 749, 754 (W.D. Ky. 1985).  Thus, the Plaintiffs' fraud claims must be dismissed for failure to comply with Fed. R. Civ. P. 9(b).

      B.    Conspiracy

To establish a claim for civil conspiracy under Tennessee law, a plaintiff must prove: "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury."  Kincaid v. SouthTrust Bank, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006) (citing Morgan v. Brush Wellman, Inc., 165 F. Supp. 2d 704, 720 (E.D.Tenn. 2001)).  The Federal Rules of Civil Procedure do not explicitly state that civil conspiracy claims must be pled with particularity.  However, some recognized authorities have noted that

16

several federal courts have required complaints alleging some form of conspiracy to include more detail than usually is demanded of other pleadings.  In civil conspiracy actions this insistence upon a higher level of specificity may result from the frequent presence of fraud as a part of the plaintiff's claim, which brings the complaint under the heightened pleading requirement of Rule 9(b) that the circumstances constituting fraud be stated with particularity, or the belief that a conspiracy charge should be treated in the same way as a fraud claim.  A few cases also reflect a view that "a bare bones statement of conspiracy" without facts is not sufficient, although it is difficult to distinguish this form of pleading conclusions from other forms of pleading conclusions, such as those illustrated in the Official Forms, which are thought to be consistent with Rule 8(a).

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1233 (3d ed. 2004) (hereinafter "Wright & Miller") (footnotes omitted); see also Twombly, 127 S.Ct. at 1966 (stating that under § 1 of the Sherman Anti-Trust Act "a bare assertion of conspiracy will not suffice"); Gutierrez v. Lynch, 826 F.2d 1534, 1538-39 (6th Cir. 1987) (finding that a civil conspiracy claim under 42 U.S.C. § 1983 "must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim"); but see 5A Wright & Miller at § 1297 (noting that because Rule 9(b) "is a special pleading requirement and contrary to the general approach of the 'short and plain,' simplified pleading . . . its scope of application should be construed narrowly and not extended to other legal theories or defenses") (footnotes omitted).[7]  Considering that the Plaintiffs' conspiracy claim concerns promotion of the "dangerous GMC truck," it appears that fraud is an implicit part of the Plaintiffs' contention.  (D.E. 1, Ex. 1 Compl., at ¶ 36.)  Thus, the Court agrees that a heightened level of specificity should be required for the Plaintiffs to plead their conspiracy claim.

Under the heading of "corporate liability and conspiracy," the complaint states the following:

---

[7]Tennessee courts also have stated that civil conspiracy must be pled with some degree of specificity.  Kincaid, 221 S.W.3d at 38.

> As a result of their participation in negligent supervision of and actual supervision of various joint ventures, joint enterprises, and/or parent/subsidiary relationships, all Defendants, among themselves, are liable to the Plaintiffs for their injuries and are guilty of having conspired among themselves to promote the dangerous GMC truck.

(D.E. 1, Ex. 1 Compl., at ¶ 36.)  The Defendants argue that this is insufficient to state a claim for civil conspiracy under Tennessee law.  As the Defendants correctly point out, the Hagens' attempt to plead civil conspiracy suffers from similar deficiencies in specificity as their fraud claim, such as failing to identify the time and place of the unlawful activity or the overt act in furtherance of the conspiracy.  <u>Kincaid</u>, 221 S.W.3d at 38.  The complaint also does not explain what "unlawful purpose" or "unlawful means" that the Defendants have allegedly undertaken.  <u>Id.</u>  That some of the Defendants may have "conspired" to "promote the dangerous GMC truck" does not, of itself, suggest that any illegal activity had taken place.  In short, the Court agrees that the Plaintiffs have not sufficiently pled conspiracy under this heightened standard.

II.    <u>Motion to Dismiss U-Haul Co. of Arizona, Golden Eagle Transportation, and Mathisen</u>

This motion essentially argues that the complaint fails to state a claim and that vicarious liability grounded in ownership of the truck is barred by a federal statute.  The Court will address these two arguments separately.

A.    <u>Adequacy of Complaint</u>

First, the Defendants argue that the complaint's "vague and conclusory allegations fail to properly state any cognizable claims against" them.  (D.E. 7, Mot. to Dismiss, at ¶ 3.)  The Defendants further contend that "Plaintiffs fail to make any specific allegations suggesting that Defendants U-Haul Co. of Arizona, Golden Eagle Transportation, or Mathisen were [sic] ever involved in any of the activities Plaintiffs allege caused their injuries."  (<u>Id.</u> at ¶ 8.)

The fact that a complaint contains conclusory factual assertions does not necessarily render the complaint defective; to hold otherwise would mischaracterize the purpose and nature of the pleadings process. Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 127 S. Ct. at 1964 (quoting Conley, 355 U.S. at 47). In a case involving a wide-ranging antitrust conspiracy among local telephone and internet service providers brought under § 1 of the Sherman Act, the United States Supreme Court held in Twombly that the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965 (citing 5 Wright & Miller at § 1216, pp. 235-36). Although, just two weeks after deciding Twombly, the Supreme Court indicated that the requirement to plead specific facts is not mandatory in all civil cases. Erickson, 127 S. Ct. at 2200 (holding that a prisoner bringing a § 1983 civil rights claim pro se need not plead specific facts). Naturally, lower courts must read the Twombly and Erickson decisions in conjunction, Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295-96 (6th Cir. 2008), but, as noted by the Sixth Circuit, these cases have generated confusion as to when a party must plead particular facts and when a more liberal standard applies. United States ex rel. Snapp, Inc. v. Ford Motor Co., 532 F.3d 496, 502 n.6 (6th Cir. 2008) (citing Iqbal v. Hasty, 490 F.3d 143, 155-58 (2d Cir. 2007)). In dictum, Judge Clay noted that the holding of Twombly may be limited to allegations of fraud or "cases likely to produce 'sprawling, costly, and hugely time-consuming' litigation." Id. (citing Twombly, 127 S. Ct. at 1973 n.6). The Second Circuit has interpreted Twombly to enact a "plausibility standard," meaning that it "did not significantly alter notice pleading or impose heightened pleading requirements for all federal claims," but, rather, imposed upon plaintiffs to

provide "more concrete allegations only in those instances in which the complaint, on its face, does

not otherwise set forth a plausible claim for relief." Weisbarth v. Geauga Park Dist., 499 F.3d 538,

542 (6th Cir. 2007) (quoting Iqbal, 490 F.3d at 157-58).  The Sixth Circuit has "taken note" of this

"plausibility standard," though it has yet to officially embrace the precise interpretation articulated

by the Second Circuit. Sensations, 526 F.3d at 296 n.1.  Still, the Sixth Circuit has emphasized that

Twombly does "not require heightened fact pleading of specifics, but only enough facts to state a

claim to relief that is plausible on its face." Bassett v. NCAA, 528 F.3d 426, 430 (6th Cir. 2008)

(quoting Twombly, 127 S. Ct. at 1974).  In determining whether a pleading is facially plausible

under Twombly, courts "are not bound to accept as true a legal conclusion couched as a factual

allegation," Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986), but

courts still must "construe the complaint in the light most favorable to the plaintiff, accept its

allegations as true, and draw all reasonable inferences in favor of the plaintiff." Directv, Inc. v.

Treesh, 487 F.3d 471, 476 (6th Cir. 2007).

 The Hagens' complaint alleges several claims against those parties they refer to as the

"Rental Defendants," who are composed of U-Haul Co. of Arizona, Golden Eagle Transportation,

and Mathisen.  (D.E. 1, Ex. 1 Compl., at ¶¶ 9, 23.)  In paragraph 23 of the complaint, the Plaintiffs

list several theories of recovery against the Rental Defendants, which include general negligence,

failure to warn, and negligent repair.  (Id. at ¶ 23.)  This requires the Court to scrutinize the face of

the complaint as to the overall plausibility of these claims against each Defendant.

 The Plaintiffs claim that Hagen rented the defective truck from Golden Eagle Transportation.

(D.E. 1, Ex. 1 Compl., at ¶ 10.)  Although the Plaintiffs do not specifically name the company, the

full context of the complaint makes it clear that in the phrase "Robert Hagen rented the

aforedescribed GMC truck from the Rental Defendants," "Rental Defendants" encompasses Golden Eagle Transportation, which was previously identified as the rental company in Minnesota where the trip allegedly began.  (Id. at ¶¶ 5, 8, 10.)  Assuming as true that Golden Eagle Transportation leased the truck to the Plaintiffs, the possibility that it may have committed the named torts rises "above the speculative level."  Twombly, 127 S. Ct. at 1965.  For instance, a reasonable inference is that if these Defendants were offering the truck for rent, they had some degree of responsibility for the truck's repair.  Also, the leasing of a product to the public could give rise to a duty to warn and other duties associated with products liability under Tennessee law.  See Tenn. Code Ann. § 29-28-102(6), (7) (explained supra in footnote 3).  Thus, the complaint states a plausible claim against Golden Eagle Transportation.

With regard to U-Haul Co. of Arizona, the only asserted fact that seems specifically directed at this Defendant, is that the rental truck bore an Arizona license plate.  (D.E. 1, Ex. 1 Compl., at ¶¶ 5, 8, 10.)  The complaint generically asserts that "Robert Hagen rented the aforedescribed GMC truck from the Rental Defendants," which might include U-Haul Co. of Arizona, and that the "Rental Defendants . . . negligently performed repair work on the vehicle."  (Id. at  ¶¶ 9-10, 23c.)  The Defendants, on the other hand, argue that "U-Haul Co. of Arizona logically could not have been involved [with any of the activities causing Hagen's injuries] as [the underlying transaction involved] a one-way rental originating in Minnesota and terminating in Tennessee."  (D.E. 7, Mot. to Dismiss, at ¶ 8.)  Looking only at the text of the Complaint, the Court does not find the stated claim for relief against U-Haul Co. of Arizona to be plausible on its face.  Bassett, 528 F.3d at 430 (quoting Twombly, 127 S. Ct. at 1974).  The Complaint does not present allegations from which the Court can reasonably infer that this Defendant ever offered for rent, repaired, controlled, or owned

21

the truck rented by Hagen.  The mere fact that the rented truck was a U-Haul bearing an Arizona license plate does not, of itself, connect the U-Haul Company of Arizona to Plaintiffs' alleged injuries.  Thus, the motion to dismiss this Defendant should be granted.

Finally, with regard to Mathisen, the Defendants argue that the Hagens have not stated a claim against him individually because he cannot be held liable for the conduct of Golden Eagle Transportation under Tennessee law.  Tennessee statutory law provides that "[a] shareholder of a corporation is not personally liable for the acts or debts of the corporation except that the shareholder may become personally liable by reason of the shareholder's own acts or conduct."  Tenn. Code Ann. § 48-16-203(b).  The Defendants assert that the complaint fails to allege any specific conduct by Mathisen that would cause him to incur individual liability.  First, the complaint does not even state that Golden Eagle Transportation is organized as a corporation or that Mathisen is a shareholder.  (See D.E. 1, Ex. 1 Compl., at ¶ 5.)  Second, because the complaint generally refers to both Mathisen and Golden Eagle Transportation as "Rental Defendants," it is unclear from the complaint whether the Plaintiff's theory of recovery is based upon vicarious liability through the actions of his company or whether Mathisen personally engaged in the allegedly tortuous conduct.  For example, the complaint reasonably could be interpreted as alleging that either an agent of Golden Eagle Transportation or Mathisen, personally, conducted negligent repairs on the truck.  (D.E. 1, Ex. 1 Compl., at ¶ 23c.)  The complaint never explicitly states which theory the Plaintiff will rely upon.  However, because the Court must "construe the complaint in the light most favorable to the plaintiff," this ambiguity will be resolved in favor of the Plaintiffs.  Treesh, 487 F.3d at 476.  Thus, even though Tennessee recognizes limited liability for shareholders, the Plaintiffs

plausibly may still prove a claim of relief against Mathisen based upon his personal conduct.[8]

      B.    <u>Vicarious Liability Under the "Graves Amendment"</u>

The Defendants argue that any claims of vicarious liability are barred by the "Graves Amendment" to the Federal Transportation Equity Act of 2005, which provides, in relevant part:

> An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if--
>
> (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
>
> (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106(a).[9]

While the Court agrees that the plain language of this statute unambiguously bars recovery based on the theory of vicarious liability arising from the Defendants' ownership of the truck, this statute seems to have minimal relevance to the Plaintiffs' claims.  The complaint never explicitly alleges that any of the Defendants are vicariously liable due solely to their status as owner or lessor

---

[8]The Defendants assert that even though Mathisen is the owner of Golden Eagle, he could not have been responsible for renting the truck to the Plaintiffs because he is a resident of Wyoming.  (D.E. 7, Mot. to Dismiss, at ¶ 8.)  However, the complaint alleges that Mathisen is a resident of Minnesota, and the Defendants have presented no evidence to the contrary.  <u>See</u> <u>Erickson</u>, 127 S. Ct. at 2200.

[9]The Court is aware of only one case within the Sixth Circuit that has applied this statute.  In <u>Jasman v. DTG Operations, Inc.</u>, 533 F. Supp. 2d 753, 758 (W.D. Mich. 2008), the district court held that the "Graves Amendment" barred a claim based upon the defendant "being the owner of the vehicle under Michigan's Motor Vehicle Civil Liability Act."  <u>Id.</u>  Although the plaintiffs in their reply brief also asserted that the defendant was directly liable, the district court found that the allegation presented solely in the reply brief was insufficient because the theory of direct liability was not alleged in their complaint.  <u>Id.</u>

of the truck.  Rather, the Plaintiffs assert theories of direct liability against the Defendants, such as negligence, failure to warn, negligent repair, etc.  (D.E. 1, Ex. 1 Compl., at ¶ 23.)  Such claims would qualify as "negligence . . . on the part of the owner (or an affiliate of the owner)" and are explicitly exempted under the statute.  49 U.S.C. § 30106(a)(2).  Still, the Defendants are correct that, to the extent that the complaint implies that they should be vicariously liable for merely owning or leasing the truck, such claims would be barred.

In summary, the Court grants dismissal of any claims arising from the vicarious liability of non-negligent lessors of the truck.  Additionally, the Court grants the motion to dismiss U-Haul Co. of Arizona.  In all other respects, the motion is denied.

III.   Motion to Dismiss U-Haul International

The Defendants argue that U-Haul International should be dismissed because the Court lacks personal jurisdiction over it and that the Plaintiffs have failed to state a claim against it upon which relief can be granted.

A.   Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may seek dismissal on the grounds that a court lacks personal jurisdiction.  A federal court may exercise jurisdiction over the person "in a diversity case if such jurisdiction is (1) authorized by the law of the state in which the court sits; and (2) is otherwise consistent with the Due Process Clause of the Fourteenth Amendment."  Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003).  The Tennessee long-arm statute confers "jurisdiction of the courts of this state as to any action or claim for relief arising from . . . [t]he transaction of any business within the state [or] [e]ntering into a contract for services to be rendered . . . in this state [or] [a]ny basis not inconsistent with the constitution of this state or of the

24

United States." Tenn. Code Ann. § 20-2-214(a)(1), (5), (6).  The Tennessee long-arm statute has

been "construe[d] to extend to the limits of due process."  <u>Neal v. Janssen</u>, 270 F.3d 328, 331 (6th

Cir. 2001).  The Sixth Circuit has instructed that

> [t]he bedrock principle of personal jurisdiction due process analysis is that when the Defendant is not physically present in the forum, [he or she] must have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  "Minimum contacts" exist when the Defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.  It is necessary that the Defendant purposefully avail [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.  This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.  Random, fortuitous, or attenuated activity is not a constitutionally adequate basis for jurisdiction.

324 F.3d at 417 (internal citations and quotation marks omitted).  Both "general" and "specific"

jurisdiction may be adequate bases for personal jurisdiction.  <u>Conti v. Pneumatic Prods. Corp.</u>, 977

F.2d 978, 981 (6th Cir. 1992).  General jurisdiction exists "when the defendant's contacts with the

forum state are 'substantial' and 'continuous and systematic,' so that the state may exercise personal

jurisdiction over the defendant even if the action does not relate to the defendant's contacts with the

state." <u>Youn</u>, 324 F.3d at 417-18.  A federal court has specific jurisdiction "when 'a State exercises

personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts

with the forum.'"  <u>Id.</u> (quoting <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408,

414 n.8, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)).  Specific jurisdiction is determined by a three-

part test: (1) "the defendant must purposefully avail himself [or herself] of the privilege of acting

in the forum state or causing a consequence in the forum state;" (2) "the cause of action must arise

from the defendant's activities there;" and (3) "the acts of the defendant or consequences caused by

the defendant must have a substantial enough connection with the forum state to make the exercise

of jurisdiction over the defendant reasonable." <u>Southern Mach. Co. v. Mohasco Indus., Inc.</u>, 401 F.2d 374, 381 (6th Cir. 1968).

The burden of establishing the existence of personal jurisdiction lies with the party asserting such jurisdiction, i.e. the plaintiff. <u>Neogen Corp. v. Neo Gen Screening, Inc.</u>, 282 F.3d 883, 887 (6th Cir. 2002). Although, a plaintiff is only required to meet this burden when challenged by a motion under Rule 12(b)(2), which the moving defendant supports by attaching affidavits. The Sixth Circuit has noted:

> Where a motion to quash and dismiss is filed, <u>supported by affidavits</u>, the non-moving party may not rest upon allegations or denials in his pleadings but his response by affidavit or otherwise must set forth specific facts showing that the court has jurisdiction. In this respect the rule is similar to a motion for summary judgment under Rule 56(e), Fed. R. Civ. P.

<u>Weller v. Cromwell Oil Co.</u>, 504 F.2d 927, 929-30 (6th Cir. 1974) (emphasis added). When the defendant's motion is supported by affidavit, the plaintiff "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."[10] <u>Theunissen v. Matthews</u>, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing <u>Weller</u>, 504 F.2d at 930). However, when the defendant fails to attach supporting affidavits, as in this case, a Rule 12(b)(2) motion cannot be sustained because the Court will have been presented with no evidence contradicting the plaintiff's assertion of jurisdiction over the defendant. Furthermore, the Federal Rules, specifically Rule 8(a), do not even require that the complaint allege facts supporting personal jurisdiction, but only subject matter jurisdiction. <u>See</u> <u>Milwee v. Peachtree Cypress Inv. Co.</u>, 510 F.

---

[10]When a Rule 12(b)(2) motion has been properly supported, the trial court has three procedural alternatives: "it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." <u>Mull v. Alliance Mortg. Banking Corp.</u>, 219 F. Supp. 2d 895, 903 (W.D. Tenn. 2002) (quoting <u>Weller v. Cromwell Oil Co.</u>, 504 F.2d 927, 930 (6th Cir. 1974)).

Supp. 279, 283-84 (E.D. Tenn. 1977); (citing Stirling Homex Corp. v. Homasote Co., 437 F.2d 87, 88 (2d Cir. 1971)).

Even if there were such a pleading requirement,[11] the Plaintiffs in this case would have satisfied it.  The Hagens' complaint sets forth that U-Haul International "is a foreign corporation qualified to do, and at all relevant times doing, business in Tennessee," and that these contacts subject it to the jurisdiction of this Court.  (D.E. 1, Ex. 1 Compl., at ¶¶ 3, 9.)  Taken as true, the fact that the Defendant was "doing business" in Tennessee would establish personal jurisdiction over it. Youn, 324 F.3d at 417-18; see also Steelman v. Strickland, 78 F.R.D. 187, 190 (E.D. Tenn. 1977) (finding personal jurisdiction over a defendant who continuously transacted business in Tennessee, "albeit not with the plaintiffs").  Purposely and continuously conducting business within the state would supply the "minimum contacts" necessary to ensure that exercising jurisdiction over the Defendant comports with "traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945).  Because U-Haul International has failed to submit any contrary proof to the Plaintiffs' assertion of personal jurisdiction, the Court denies its Rule 12(b)(2) motion to dismiss.[12]

---

[11]Some courts, when ruling on a Rule 12(b)(2) motion unsupported by affidavits, have assumed the allegations of personal jurisdiction in the complaint to be true.  See Hicks v. Clay County, No. 08-0362-CV-W-FJG, 2008 U.S. Dist. LEXIS 87965, *6-7 & n.4 (W.D. Mo. 2008) (stating that where "the moving party has filed no affidavits controverting the relevant allegations of complaint, the Court must take the allegations of the complaint as true") (citing Cantrell v. Extradition Corp. of Am., 789 F. Supp. 306, 308 (W.D. Mo. 1992)).

[12]In its memorandum of law, the Defendant claims that
U-Haul International, Inc. is not in the business of renting or maintaining trucks, did not own the subject vehicle, and did not rent the subject vehicle to Plaintiffs.  U-Haul International, Inc. is not registered to do business within the state of Tennessee and has transacted no business in the state of Tennessee.  Additionally, U-Haul International, Inc. owns no real estate in Tennessee, has no employees in Tennessee,

B.      Failure to State a Claim

As with the Defendants' motion to dismiss addressed in section II.A. above, U-Haul International's argument focuses on the lack of specificity in the complaint.  The complaint inferentially alleges that U-Haul International, among other things, "rented the aforedescribed GMC truck" to Hagen, "negligently performed repair work on the vehicle," "breached specific representations of its warranty," and "negligently rented, distributed, marketed and promoted the . . . truck."  (D.E. 1, Ex. 1 Compl., at  ¶¶ 9, 10, 23.)  U-Haul International denies the Plaintiffs' allegations by stating that it

> is not responsible for the rental, maintenance, inspection, repair, or marketing and promotion of the subject vehicle.  Defendant U-Haul International, Inc. is a separate legal entity that, as an improperly named party, has no responsibility for any alleged injuries arising from Plaintiffs' use of the subject vehicle.  Defendant U-Haul International, Inc. is not the owner of the subject vehicle and is not involved in any aspect of the leasing, operation, or maintenance of the vehicle.

(D.E. 8, Mot. to Dismiss, at ¶ 14.)

U-Haul International's argument challenges the truth of the Plaintiffs' factual assertions and relies on facts that would need to be established by evidence extrinsic to the face of the complaint.  Considering that this is a 12(b)(6) motion, the Court accepts all the Plaintiffs' factual allegations as true.  Erickson, 127 S. Ct. at 2200 (citing Twombly, 127 S. Ct. at 1964).  Because U-Haul International has not shown that, when assuming all allegations of the Plaintiffs' complaint to be correct, the complaint fails to state a claim, relief under Rule 12(b)(6) cannot be granted.  The proper avenue to challenge the accuracy of factual allegations of a complaint is a summary judgment

---

maintains no offices in Tennessee, and owns no bank accounts or other property in Tennessee.
(D.E. 8, Mot. to Dismiss, at ¶ 10.)  However, the Defendant has not established any of these facts through sworn statements, but merely in the allegations of a memorandum.

motion, which would be supported by documentary evidence.  See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

Finally, as was stated above in section II.B., the Court agrees that, under the "Graves Amendment," U-Haul International cannot be held vicariously liable for mere ownership of the truck.  49 U.S.C. § 30106(a)(2).  All other aspects of its motion under Rule 12(b)(6) must be denied.


<u>CONCLUSION</u>

For the reasons articulated herein, the Court hereby DENIES the Plaintiffs' motion to remand.  With regard to the Defendants' motions, the Court GRANTS the motion to dismiss U-Haul of Tennessee, West Tennessee Moving Company, and O'Brien; GRANTS the motion to dismiss the Plaintiffs' claims of fraud and conspiracy; GRANTS in part, DENIES in part the motion to dismiss claims against Golden Eagle Transportation and Mathisen; and GRANTS the motion to dismiss U-Haul Co. of Arizona.  Finally, the Court DENIES U-Haul International's motion to dismiss for lack of personal jurisdiction and GRANTS in part, DENIES in part its motion to dismiss for failing to state a claim upon which relief can be granted.

IT IS SO ORDERED this 28th day of January, 2009.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE